# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. ___1:19-cv-1633_____

PARKER WILSON,

     Plaintiff,

v.

KIM BIMESTEFER, in her official capacity
as Executive Director of the Colorado
Department of Health Care Policy & Financing,

TOM MASSEY, in his official capacity as the
Deputy Executive Director and Chief Operating
Officer of the Policy, Communications, and
Administration Office of the Colorado Department
of Health Care Policy & Financing,

DAVID L. SMITH, in his official capacity as
Manager of Benefits Coordination Section for
the Colorado Department of Health Care Policy
& Financing, and

ASHLEY DiRIENZO, in her official capacity
as Recovery Officer at the Colorado Department
of Health Care Policy & Financing

     Defendants.

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

Plaintiff, Parker Wilson, for his Complaint alleges as follows:

## I.   JURISDICTION AND VENUE

1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) because it arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.   This Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

2.    Venue is appropriate in this Court under 28 U.S.C. § 1391(b)(2) because all of the events giving rise to this Complaint occurred in this District and Defendants perform their official duties in this District.

## II.   INTRODUCTION

3.    The right to travel from one state to another is a fundamental, constitutional right. After Parker Wilson—a disabled, 18-year-old individual eligible to receive Social Security and Medicaid benefits—moved with his family from Colorado to South

Carolina, the State of Colorado demanded that assets held in a special needs trust for Mr. Wilson's lifetime benefit be repaid immediately, rather than upon Mr. Wilson's death as provided under federal law.

4. Acting upon compulsion to require him to draft such a provision in his special needs trust on pain of not granting him a federal right to Medicaid benefits based entirely on federal law, the State of Colorado succeeded in getting the approval of the Denver Probate Court to terminate his trust in order to take his trust away from him and pay it to the State of Colorado.   The Colorado state regulation which was the basis of the challenged trust provision conflicts with the federal Medicaid Act and intrudes on Mr. Wilson's right to travel interstate.

5. The State of Colorado has now received an order from the Denver Probate Court to seize Mr. Wilson's trust assets, impeding his ability to pay necessary expenses, including medical treatment not covered by Medicaid.  Such actions are causing and will continue to cause Mr. Wilson significant hardship as he is precluded from

certain medical treatment that he otherwise would be receiving through his use of assets held in trust, and he further prevented from pursuing a college education which he had planned to pay for using trust funds.

6.    The State of Colorado is penalizing Mr. Wilson for moving to another state and giving itself impermissible priority over assets held in trust that should be used for the sole and exclusive benefit for Mr. Wilson during his lifetime.  As a result of this recovery of his property in violation of his constitutional rights, Mr. Wilson was left with little funds to achieve his goals.  In addition, all other states that have paid or will pay for his medical expenses through their respective Medicaid programs, including the State of South Carolina, which currently is providing Mr. Wilson with Medicaid benefits, will not receive their pro rata share of assets that they otherwise would be entitled to under federal law upon Mr. Wilson's death.

7.    Mr. Wilson, therefore, seeks declaratory and injunctive relief against Defendants Bimestefer, Massey, Smith, and DiRienzo

in their official capacities to enjoin them from enforcing an unconstitutional regulation and to return his property to him.

## III.  PARTIES

8.     Mr. Wilson is an individual under the age of 65 who is disabled as defined in Title XIX of the federal Social Security Act. He now resides in Little River, South Carolina with his father, Rickie Wilson, who is the settlor of the Parker James Wilson Disability Trust ("Trust") dated April 12, 2013, attached hereto as Exhibit A. This Trust is a Special Needs Trust authorized under federal law and created for the sole benefit of Parker Wilson with the purpose or with the effect of establishing or maintaining his resource eligibility for medical assistance under the Medicaid program.

9.     Mr. Wilson files this Complaint against Kim Bimestefer, in her official capacity as Executive Director of the Colorado Department of Health Care Policy & Financing (the "Department"), Tom Massey, in his official capacity as Deputy Executive Director, Chief Operating Officer, and Director of the Policy, Communications,

and Administration Office for the Department, and David L. Smith, in his official capacity as Manager of the Third Party Liability & Recoveries Section of the Department.

10.   Defendant Kim Bimestefer is sued in her official capacity as the Executive Director of the Department.  The Department is responsible under Colorado law for the operation and administration of the Colorado Medical Assistance Act, Colorado's Medicaid Program (hereinafter "Medicaid").

11.   Defendant Tom Massey is sued in his official capacity as the Deputy Executive Director and Chief Operating Officer of the Policy, Communications, and Administration Office of the Department.   Director Massey oversees the Department's administration of disability trusts and recovery for the Department.

12.   Defendant David L. Smith is sued in his official capacity as Manager of the Third Party Liability & Recoveries Section for the Department.  As part of his duties, Mr. Smith oversees Colorado's recovery of benefits from Disability Trusts.

13.    Defendant Ashley DiRienzo is sued in her official capacity as Recovery Officer for the Department.   The Recovery Officer is responsible under Colorado law to recover assets but only on the death of the disabled individual.   Ms. DiRienzo exceeds her authority in recovering trust assets prior to death under federal law.   10 C.C.R. 2505-10, §8.100.7.E.6.b.

## IV.   ALLEGATIONS/BACKGROUND

### A.   Medicaid Background.

14.    Medicaid was established in 1965 to provide medical assistance to indigent individuals who have insufficient income and resources to meet the costs of necessary medical care and services. 42 U.S.C. § 1396.   However, over the years, Medicaid has been expanded well beyond its initial mission to include persons who otherwise would not have access to affordable health care.   Now Medicaid covers people with low incomes without counting resources at all and it permits disabled people with resources to receive Medicaid benefits through three types of trusts, under 42 U.S.C. §

1396p(d)(4)(A), (B) and (C).    This case involves a trust under 42 U.S.C. § 1396p(d)(4)(A) (hereinafter referred to as the "Federal Statute").

15.    Medicaid is a cooperative federal-state program in which the federal government provides funding for the provision of state medical services to qualified individuals.  In Colorado, the federal government pays between 50 percent to 90 percent of the costs, depending upon the type of Medicaid program involved.

16.    Medicaid is a federal program administered by the states which receives substantial reimbursement for the costs of providing medical services and reimbursement for the costs of administering the program.  The federal government has expanded the program dramatically since 1965.

17.    Participation in the Medicaid program is optional, but all states participate in most aspects of the program.    Colorado participates fully.

18.    However, once a state elects to participate in the Medicaid program, it must comply fully with the Medicaid Act. 42

U.S.C. § 1396a.   Regarding trusts and recovery of assets under Medicaid law, federal law compliance is mandatory under 42 U.S.C. § 1396a(a)(18).  There is no state option to deviate from federal trust and recovery laws.

19.    Individuals who may be eligible for receipt of Medicaid assistance include individuals who are blind, disabled, and/or aged 65 and older if they meet certain threshold requirements.  42 U.S.C. § 1396a(a)(10).

20.    A person's eligibility for Medicaid is a function of the applicant's countable assets, and the definition of 'countable' is critical.  Once the assets exceed the statutory ceiling, in some cases the applicant is disqualified from receiving benefits. 42 U.S.C.A. § 1396a(a)(10)(I) and (II).  Assets may include both income and resources, but in some cases, only income is considered.

21.   Under the Medicaid Act, certain assets are excluded from the eligibility determination.  One such asset is known as a "special needs trust."  42 U.S.C. § 1396p(d)(4)(A) and (d)(4)(C) (hereinafter "Special Needs Trust").

22.   Special Needs Trusts allow individuals with long-term disabilities to maintain funds which can be used to pay for medical expenses and additional needs not covered by Medicaid, while still allowing them to remain eligible to receive Medicaid at their choice and election.  This is a lifetime benefit and provides a guarantee that there will always be access to medical care.

23.   Any long term care Medicaid benefits paid by Medicaid during the life of the individual, however, must be repaid from trust assets upon the death of the individual, but not before.  42 U.S.C. § 1396p(d)(4)(A).  See also 42 U.S.C. § 1396p(b)(1).

24.   Specifically, federal law excludes amounts held in Special Needs Trusts from determining an individual's eligibility for receipt of Medicaid benefits subject to the following conditions:  such trust must (1) contain the assets of an individual under age 65 who is disabled (as defined in 42 U.S.C. § 1382c(a)(3)); (2) be established for the benefit of such individual by the individual, a parent, grandparent, legal guardian of the individual, or a court; and (3) the state will receive all amounts remaining in the trust upon the death

of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a state plan.  42 U.S.C. § 1396p(d)(4)(A).  There can be no state deviation under this statute.

26.    42 U.S.C § 1396p(b)(1) prohibits states from requiring repayment for medical assistance correctly paid on behalf of an individual until after the death of the individual, the individual's spouse, or in some cases the individual's offspring.  42 U.S.C. § 1396p(b)(1), (2).

26.    The federal requirements for Special Needs Trusts and recovery of assets are mandatory upon the states if they choose to receive federal funds to run Medicaid programs.  42 U.S.C. § 1396a(a)(18).

B.    **Colorado Law Conflicts with the federal Medicaid Law, 42 U.S.C. §§ 1396,** *et seq.*

27.    The State of Colorado is a participant in the Medicaid program.

28.     The State of Colorado has elected to participate in the Medicaid program through the Colorado Medical Assistance Act codified at C.R.S. § 25.5-4-101 through 25.5-6-101, *et seq.*

29.     The Department is the single state agency administering the Colorado Medical Assistance Program.  C.R.S. § 25.5-1-104.

30.     As a participant in the Medicaid program, the State of Colorado is required to comply with the federal statutory requirements for Medicaid.  Specifically, 42 U.S.C. § 1396p is binding on the State of Colorado due to its participation in the Medicaid program.  42 U.S.C. § 1396a(1)(18).

31.     The State of Colorado has imposed additional criteria on Special Needs Trusts under C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, § 8.100.7.E.6.b, contrary to federal law.

32.     C.R.S. § 15-14-412.8 requires Special Needs Trusts provide (1) "that, upon the death of the beneficiary *or termination of the trust during the beneficiary's lifetime, whichever occurs sooner*, the Department of Health Care Policy and Financing receives any amount remaining in the trust up to the total medical assistance

paid on behalf of the individual," (emphasis added); and (2) "[t]he sole lifetime beneficiaries of the trust are the individual for whom the trust is established and the state medical assistance program." C.R.S. § 15-14-412.8.

33.   Likewise, Code of Colorado Regulations, 10 C.C.R. 2505-10, § 8.100.7.E.6.b, requires, among other things, that "[t]he trust terminates upon the death of the individual *or if the trust is no longer required for Medical Assistance eligibility in Colorado*" (emphasis added) (§8.100.7.E.6.b(i)(e)) and ". . . that, upon the death of the beneficiary *or termination of the trust*, the Department shall receive all amounts remaining in the trust up to the amount of total Medical Assistance paid on behalf of the individual." (emphasis added)  (§8.100.7.E.6.b(i)(h)).

34.   C.R.S.   §   15-14-412.8   and   10   C.C.R.   2505-10,   § 8.100.7.E.6.b impermissibly grant the Department priority for reimbursement over any other state that may provide or has provided medical assistance to the beneficiary during his or her lifetime.

35.    Critically, C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, § 8.100.7.E.6.b preclude a trust beneficiary, such as Mr. Wilson, from being able to move from the State of Colorado to another state and still maintain the Special Needs Trust with all assets intact.

36.    Mr. Wilson's trust would not be approved by the Department unless he inserted a trust provision in compliance with provisions set forth above, precluding him from obtaining Medicaid benefits as provided under federal law.

37.    Rather, under Colorado's laws and regulations, in the event that the beneficiary moves to another state, the Special Needs Trust would terminate and the State of Colorado would ". . . receive all amounts remaining in the trust up to the amount of total Medical Assistance paid on behalf of the individual."   C.R.S. § 15-14-412.8(2)(b).

38.    The application of C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, § 8.100.7.E.6.b eviscerates the purpose of the Special Needs Trust exception which requires that such a trust be established and

used for the sole benefit of the disabled individual during his or her lifetime.

39.    If the State of Colorado were given an impermissible priority for reimbursement prior to the beneficiary's death, a beneficiary could be left with no funds to pay for other expenses that are not covered by Medicaid, even though the sole purpose of the trust under the federal statute is to provide supplemental resources to that individual for the remainder of his or his lifetime.

40.    These laws also unfairly restrict a Medicaid recipient's ability to move out of the State of Colorado without penalty.  These provisions, in effect, require that residents of Colorado with Special Needs Trusts remain in the State of Colorado for their entire lifetimes or else be forced by the State of Colorado to forfeit assets held in their Special Needs Trusts for the sole reason that they have exercised their fundamental, constitutional right to move to another state.

41.   In addition, other states are left without the ability to be reimbursed for Medical Assistance they may have provided or will provide to the beneficiary for the remainder of his or her lifetime.

### C.   The Medicaid Act requires that such trusts be used for the sole benefit of the individual.

42.   Under the Medicaid Act, provisions that provide benefits to other individuals or entities during the disabled individual's lifetime or allow for termination of the trust prior to the individual's death and payment of the corpus to another individual or entity (other than the state(s) or another creditor for payment for goods or services provided to the individual) would result in disqualification from the Special Needs Trust exception.

43.   C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, § 8.100.7.E.6.b contradict federal law which only permits reimbursement from Special Needs Trust assets upon death of the beneficiary.

44.    By placing additional restrictions on the eligibility requirements for Medicaid benefits of Special Needs Trust beneficiaries, Colorado has created regulations and statutes which conflict with the federal Medicaid program and are in violation of the United States Constitution.

45.    Indeed, the United States Department of Health & Human Services through its subdivision of the Centers for Medicare and Medicaid Services, previously issued an opinion that Colorado's rule would not comply with federal law because it places additional restrictions on Medicaid eligibility.   See July 9, 2004 letter from Centers for Medicare & Medicaid Services attached as Exhibit B. Colorado has intentionally ignored this letter for over 15 years.

**D.    Mr. Wilson Is a Qualified Recipient of Medicaid Benefits with a Special Needs Trust.**

46.    On April 12, 2013, Rickie Allen Wilson, as father of Parker James Wilson, settled the Parker James Wilson Disability Trust ("the Trust"), pursuant to 42 U.S.C. § 1396p(d)(4)(A) and

C.R.S. § 15-14-412.8.

47.    Rickie's intent in creating the Trust was to provide for Plaintiff's special needs above and beyond the services provided by public benefits while still maintaining Plaintiff's eligibility for such public benefits programs, namely Medicaid.  The Trust was funded with wrongful death proceeds received as the result of an accident in which Plaintiff's mother was killed and Plaintiff was rendered a paraplegic.

48.    The Colorado Fund for People with Disabilities, Inc. (CFPD) was the original trustee of the Trust, in turn designating BOKF, N.A., d/b/a Colorado State Bank & Trust (CSBT) as corporate co-trustee pursuant to Article VI of the Trust.

49.    In mid-2017, Rickie Wilson and Plaintiff moved from the State of Colorado to the State of South Carolina.  Plaintiff subsequently qualified for Medicaid benefits in South Carolina.

50.    In August 2017, CFPD informed the Department that Plaintiff was no longer eligible for benefits under Colorado Medicaid because he had moved to another state.

51.   In November 2017, the Department wrote to CFPD and CSBT, regarding the status of the Trust.

52.   In March 2018, counsel for CFPD and CSBT responded to the Department, affirming the co-trustees' intention to terminate the Trust and distribute the balance to the Department "upon release of liability" pursuant to trust terms.   Neither CFPD nor CSBT considered the requisites of federal law which would not permit recovery of trust assets prior to the beneficiary's death.

53.   In April 2018, the Department filed a *Petition to Terminate Trust* in Denver Probate Court (*In the Matter of: Parker James Wilson Disability Trust,* Case No. 2018PR30474).

54.   Subsequently, without considering federal law and applying only State law, the Denver Probate Court terminated the trust on December 26, 2018 and ordered that the entirety of the trust assets be paid to the state.   No evidentiary hearing even occurred nor was Mr. Wilson served with legal process prior to this taking of his benefits.

55.   The trustees then subsequently paid the remainder of the trust funds, after subtracting their own fees and costs, into the registry of the Denver Probate Court.

56.   A stipulation agreed to by the parties stated as follows:

> The Parties are further in agreement that no assets may be withdrawn from this account without express Court Order from this Court including notice to all interested parties, and only upon the Court's determination that resolution of the matter is final and that time for the filing of any appeal has passed.

57.   On February 14, 2019, the State Department filed a motion for immediate release of the funds held in the registry to the state.   The amount in the registry was $31,758.18.   The Denver Probate Court granted the request notwithstanding the afore-mentioned stipulation.   Those funds have since been seized by the State Department leaving Mr. Wilson with nothing.

58.   Mr. Wilson had requested to reform his trust, through a procedure entitled "decanting" but his request was denied by the probate court.   That particular right is on appeal to the Colorado Court of Appeals in Case No. 2019CA218.

### E.   Trust Terms and State and Federal Law.

59.   Article VIII of the Trust provides that upon termination of the Trust, the Department is to be reimbursed out of the Trust for medical benefits provided to the primary beneficiary during his lifetime.

60.   Article VIII of the Trust further requires that, barring exhaustion of assets, the Trust "shall terminate upon the death of the primary beneficiary *or if the trust is no longer required for Medicaid eligibility in Colorado."* (Emphasis added).

61.   The italicized trust language above reflects requirements of Colorado state law and regulation not found in the federal statute. Specifically:

C.R.S. § 15-14-412.8(2)(b) requires that any disability trust:

> . . . provides that upon the death of the beneficiary or termination of the trust during the beneficiary's lifetime, whichever occurs sooner, the department of health care policy and financing received any amount remaining in the trust up to the total medical assistance paid on behalf of the individual.

### F.   Colorado Unlawfully Penalized Mr. Wilson for Moving to Another State.

62.   The Privileges and Immunities Clause of Article IV, § 2, and the Privileges and Immunities Clause of the Fourteenth Amendment to the United States Constitution prohibit the State of Colorado from infringing on a United States citizen's fundamental right to interstate travel.

63.   The Equal Protection Clause of the Fourteenth Amendment prohibits states from discriminatorily burdening fundamental rights.

64.   In August 2017, the co-trustees of Mr. Wilson's trust notified the Department that Mr. Wilson was no longer eligible for benefits under Colorado Medicaid because he had moved out-of-state with his father.

65.   Mr. Wilson moved with his father to the State of South Carolina to be closer to family members and hopefully to attend college there.

66.   Mr. Wilson continues to receive Medicaid assistance from the State of South Carolina because he is now a resident of that State.

67.   Upon Mr. Wilson's death, the State of South Carolina (in addition to the State of Colorado) would have a right to reimbursement for medical assistance it has paid or will pay on his behalf were the trust to be reformed to comply with federal law. However, that right only exists if funds were left in the trust which would be very unlikely in this case.

68.   After Mr. Wilson moved to the State of South Carolina, the Department sought immediate termination of the trust and full reimbursement.

69.   The assets have now been seized by the State of Colorado.

70.   Mr. Wilson has an urgent and continuing need for supplemental support from the assets of the trust, which was established for this very purpose.  Those assets should remain available to Mr. Wilson until depletion of the trust or his death, at which time any remaining assets would be disbursed on a pro rata

basis to any and all states that provided medical assistance to Mr. Wilson during his lifetime – not just the State of Colorado.

71.   By taking Mr. Wilson's property, the Department prevented Mr. Wilson's ability to support himself and to provide supplemental resources so he could pay for upcoming medical treatments not covered by Medicaid and go to college, both fully permissible uses of the Trust assets.

72.   In addition, those funds were to be used for Mr. Wilson's sole and exclusive benefit for the remainder of his life.  He has no other source of assets or resources to supplement his living and other expenses.

73.   It is clear that the Department imposed on Mr. Wilson additional requirements that conflict with federal law and are unfair to Mr. Wilson who is entitled under federal law to the use of funds contained in his trust for his sole and exclusive benefit *until his death* or the depletion of the Trust.

74.   Had Mr. Wilson remained in Colorado, he would still be eligible for receipt of Medicaid and would have full access to use the

funds in his Special Needs Trust for the remainder of his life, including trust depletion of the entirety of his trust assets.

75.   It is only because Mr. Wilson is no longer eligible to receive Medicaid benefits from the State of Colorado (though he now receives benefits from the State of South Carolina), that the State of Colorado took his funds even though he is still alive.  This act took property from him which was not State property in violation of Mr. Wilson's federal statutes and constitutional rights.

76.   Mr. Wilson had immediate need of the assets contained in his Special Needs Trust to pay for certain, necessary medical procedures not covered by Medicaid and to go to college, which he can no longer do.

77.   As a result, Mr. Wilson seeks relief from this Court.

## V.   FIRST CAUSE OF ACTION
## (42 U.S.C. § 1983 for violation of 42 U.S.C. § 1396p)

78.   Mr. Wilson realleges each allegation above as if fully set forth herein.

79. There is an actual, present, and justiciable controversy between Mr. Wilson and Defendants over the termination of his Special Needs Trust and reimbursement only to the State of Colorado prior to his death.

80. The Medicaid Act grants Mr. Wilson the right to have a Special Needs Trust while still remaining eligible for receipt of Medicaid funds.

81. The Medicaid Act also grants Mr. Wilson the right to use those funds for his sole benefit during his lifetime.

82. C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, § 8.100.7.E.6.b impose additional requirements on Mr. Wilson for establishing a qualifying Special Needs Trust.

83. Specifically, C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, § 8.100.7.E.6.b require that, in the event Mr. Wilson moves out of state and is no longer receiving Medicaid benefits from the State of Colorado, the State of Colorado can terminate the Special Needs Trust and seek immediate reimbursement of all benefits paid to date.

84.   Because C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, § 8.100.7.E.6.b impose additional restrictions on eligibility, they directly conflict with the Medicaid Act, which permits disabled beneficiaries with full access to funds held in Special Needs Trusts for their lifetime.

85.   No act of Congress, and in particular no part of the Medicaid Act, permits states to impose additional restrictions on eligibility requirements or to penalize Medicaid eligible recipients for moving to another state.

86.   No act of Congress, and in particular no part of the Medicaid Act, permits the State of Colorado to terminate a Special Needs Trust prior to the beneficiary's death for the purpose of reimbursing itself.

87.   As a result, C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, § 8.100.7.E.6.b conflict with 42 U.S.C. § 1396p and should be declared void and unenforceable.

88.   The State of Colorado's conduct, through its executive agents and officials, have caused Mr. Wilson to suffer an immediate

and irreparable harm to his property interests in the trust and have penalized him for exercising his constitutional right to travel.

89.    10 C.C.R. 2505-10; § 8.100.7.E.6.b and portions of C.R.S. § 15-14-412.8 also violate 42 U.S.C. § 1396a(a)(18) and thus are void and unenforceable because those provisions have been preempted by the federal statute which controls trusts and recovery of assets under the provisions of superceding federal law.

## VI.    SECOND CAUSE OF ACTION
### (42 U.S.C. § 1983 for violation of the Due Process Clause of the Fourteenth Amendment)

90.    Mr. Wilson realleges each allegation above as if fully set forth herein.

91.    Defendants, in their official capacities, were and are acting under color of Colorado law by obtaining repayment from the Denver Probate Court from Mr. Wilson's Special Needs Trust prior to his death.

92.     There is an actual, present, and justiciable controversy between Mr. Wilson and Defendants over the termination of his Special Needs Trust and distribution of assets prior to his death.

93.     Mr. Wilson has a property interest in his Medicaid benefits.

94.     As a beneficiary, Mr. Wilson also has a property interest in the assets held in his Special Needs Trust during his lifetime.

95.     Moreover, Mr. Wilson's assets were seized without his ability to defend himself.  The procedure utilized by the Denver Probate Court did not permit the State to serve Mr. Wilson with process and did not grant him the right to a hearing before taking his property away from him.  Therefore, Mr. Wilson was deprived of procedural due process.

96.     By enforcing C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, § 8.100.7.E.6.b due to the fact that Mr. Wilson is no longer a resident of Colorado, Mr. Wilson lost all of the assets held in his trust that he had a right to use for his lifetime and which he must rely on for care and educational purposes.

97.   The actions of the Department, through its officers and agents, also inequitably grants the State of Colorado priority over all other states in violation of federal law.

98.   As a result, C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, § 8.100.7.E.6.b permit deprivation of Mr. Wilson's property without due process of law in violation of the Fourteenth Amendment to the United States Constitution, both substantially and procedurally.

99.   The State of Colorado's conduct as set forth herein has caused and will continue to cause Mr. Wilson to suffer immediate and irreparable harm to his constitutional right to due process.

100.  As a result, Mr. Wilson is entitled to judgment and injunctive relief to protect his constitutional rights.

101.  Mr. Wilson is entitled to a declaratory judgment from this Court that C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, § 8.100.7.E.6.b are void and unenforceable.

102.  A judicial declaration is necessary and appropriate at this time under the circumstances in order that Mr. Wilson may assert

his rights to use the assets in his Special Needs Trust, which was established for his sole lifetime benefit.

103. This Court should order that Mr. Wilson's assets be returned to him until he receives both substantive and procedural rights to due process as required under 42 U.S.C. § 1396a(a)(3) and under the Fourteenth Amendment to the United States Constitution.

## VII. THIRD CAUSE OF ACTION
### (42 U.S.C. § 1983 for violation of the Right to Travel Guaranteed by the Fourteenth Amendment)

104. Mr. Wilson realleges each allegation above as if fully set forth herein.

105. There is an actual, present, and justiciable controversy between Mr. Wilson and Defendants over the termination of his Special Needs Trust and distribution of assets prior to his death.

106. Mr. Wilson has a fundamental right to travel guaranteed by the Fourteenth Amendment of the United States Constitution.

107. C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, § 8.100.7.E.6.b impose an unconstitutional barrier to interstate movement for Colorado Medicaid recipients with Special Needs Trusts by imposing a severe monetary penalty on Special Needs Trust beneficiaries who move from Colorado to another state by requiring that the State of Colorado be reimbursed for all benefits paid on behalf of the Medicaid recipient through the Special Needs Trust assets at the time the recipient moves to another state, rather than upon the recipient's death.

108. Colorado's regulations have impermissibly burdened Mr. Wilson's fundamental right to travel and have the effect of deterring, impeding, and penalizing Mr. Wilson, and potentially others similarly situated, for relocating to another state.

109. Defendants, in their official capacities, were and are acting under color of Colorado law by taking actions to inhibit Mr. Wilson's right to travel interstate by freezing all assets held in his Special Needs Trust and requiring reimbursement of all benefits

paid by the State of Colorado just because Mr. Wilson has exercised his constitutional right to move to another state.

110.  As a result, C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, § 8.100.7.E.6.b unconstitutionally infringed on Mr. Wilson's right to travel in violation of the Fourteenth Amendment to the United States Constitution.

111.  The State of Colorado's conduct as set forth herein has caused and will continue to cause Mr. Wilson to suffer immediate and irreparable harm to his constitutional right to travel.

112.  As a result, Mr. Wilson is entitled to judgment and injunctive relief to protect his constitutional rights.

113.  Mr. Wilson is entitled to a declaratory judgment from this Court that C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, § 8.100.7.E.6.b are unconstitutional.

## VIII. PRAYER FOR RELIEF

WHEREFORE Plaintiff Parker Wilson prays for relief as follows:

a.      A judgment declaring that (1) C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, § 8.100.7.E.6.b conflict with 42 U.S.C. § 1396p, and thus, are void and unenforceable; (2) C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, § 8.100.7.E.6.b deprive Mr. Wilson of property without due process of law in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and (3),  C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, § 8.100.7.E.6.b unconstitutionally infringe on Mr. Wilson's fundamental right to interstate travel in violation of the Fourteenth Amendment.

b.      A permanent injunction enjoining Defendants and their successors, employees, designees, agents, and all others in active concert, privity or participation with them, from enforcing C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, § 8.100.7.E.6.b and requiring Defendants to return to Mr. Wilson all funds belonging to him that were unlawfully seized;

c.      An order restoring Mr. Wilson's right to his assets until and unless he is afforded procedural due process pursuant to 42

U.S.C. § 1396a(a)(3) and the Fourteenth Amendment to the United States Constitution;

d.    An award of Mr. Wilson's reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988; and

e.    Such other and further relief as the Court may deem just and proper.

DATED:   6/6/2019   .        Respectfully submitted,


/s/ R. Eric Solem-Original Sig. on File
R. Eric Solem
Lance E. McKinley
SOLEM, WILLIAMS & McKINLEY, P.C.
3333 S. Bannock Street, Suite 900
Englewood, Colorado  80110
Telephone:  (303) 761-4900
Facsimile:   (303) 761-2989
E-mail:     eric@solemlaw.com
                    lance@solemlaw.com
*Counsel for Plaintiff Parker Wilson*


PLAINTIFF'S ADDRESS:

1641 Edgewood Drive
Little River, South Carolina  29566