IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 19-cv-01633-RBJ

PARKER WILSON,

      Plaintiff,

v.

KIM BIMESTEFER, in her official capacity as Executive Director of the Colorado Department
of Health Care Policy & Financing,
TOM MASSEY, in his official capacity as Executive Director and Chief Operating Officer of the
Policy, Communications, and Administration office of the Colorado Department of Health Care
Policy & Financing,
DAVID L. SMITH, in his official capacity as Manager of Benefits Coordination Section for the
Colorado Department of Health Care Policy & Financing, and
ASHLEY DiRIENZO, in her official capacity as Recovery Officer at the Colorado Department
of Health Care Policy & Financing,

      Defendants.

---

## ORDER

---

      This case is before the court on defendants Kim Bimestefer, Tom Massey, David L.

Smith, and Ashley DiRienzo's motion to dismiss, ECF No. 24.  For the following reasons, the

motion is granted.

## BACKGROUND

      This case concerns the Denver Probate Court's termination of a Medicaid-compliant

special needs trust established for plaintiff Parker Wilson.  Medicaid is a federal program

administered by states, which receive reimbursement from the federal government.  A state that

1

participates in Medicaid must comply with the Medicaid Act, 42 U.S.C. § 1396a.  Though

Medicaid eligibility is generally determined by an individual's assets, certain assets are excluded

from consideration, including a "special needs trust" as defined § 1396p(d)(4)(A) and (d)(4)(C).

Special needs trusts allow individuals with long-term disabilities to maintain funds to pay for

medical expenses not covered by Medicaid, while remaining eligible for Medicaid.  Under §§

1396p(d)(4)(A) and 1396p(b)(1), Medicaid benefits paid during the individual's life must be

repaid from any remaining trust assets upon an individual's death, at which point the trust must

terminate.

C.R.S. § 15-14-412.8 establishes requirements for "disability trusts," a variant of special

needs trusts.  Section 15-14-412.8 allows for disability trusts to terminate prior to the death of the

beneficiary, with subsequent reimbursement to the Department of Health Care Policy

("Department").  Under section 10 of the Colorado Code of Regulations, specifically 10 C.C.R.

2505-10:8.100.7.E.6.b.i(e), a disability trust must terminate "upon the death of the individual or

if the trust is no longer required for Medical Assistance eligibility in Colorado."  Also, 10 C.C.R.

2505-10:8.100.7.E.6.b.i(h) requires that "upon the death of the beneficiary or termination of the

trust, the Department shall receive all amounts remaining in the trust up to the amount of total

Medical Assistance paid on behalf of the individual."

In 2013, Mr. Wilson's father established the Parker James Wilson Disability Trust in

compliance with federal and requirements of C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10, §§

8.100.7.E.6.b.i.e-h.  ECF No. 24 at 3.  The trust contained funds Mr. Wilson received following

an automobile accident that left him disabled.  *Id.*  The trust names Mr. Wilson the primary

beneficiary and the Department the remainder beneficiary.  *Id.*  Pursuant to C.R.S. § 15-14-412.8

2

and 10 C.C.R. 2505-10, §§ 8.100.7.E.6.b.i.e-h, the trust stated that it "shall terminate upon the death of the primary beneficiary or if the trust is no longer required for Medicaid eligibility in Colorado." ECF No. 22-1.

In 2017 Mr. Wilson moved with his family to South Carolina. ECF No. 22 at 3. The Department filed a petition to terminate Mr. Wilson's trust in Denver County probate court, Case No. 18PR30474, because after leaving the state, Mr. Wilson was no longer eligible for Colorado Medicaid. ECF No. 24 at 4. In July of 2018 the probate judge ordered that the trustees could not disburse any further trust funds until she ruled on the Department's petition. *Id.* On December 26, 2018 the probate judge issued an order terminating the trust with reimbursement to the Department of the remaining trust funds, a total of $31,758.18. *Id.* at 5. Mr. Wilson did not file an appeal of the probate order before the February 13th deadline, and the probate judge ordered disbursement of the funds to the Department on March 29, 2019. *Id.* On July 15, 2019 Mr. Wilson filed an appeal on a separate but related case, Case No. 18PR30593, in which Mr. Wilson had requested that the probate court decant the trust and eliminate the Department's remainder interest. *Id.* That appeal is still pending. ECF No. 22 at 21.

On June 6, 2019 Mr. Wilson filed his first complaint in this 42 U.S.C. § 1983 action, seeking to enjoin defendants Kim Bimestefer, Tom Massey, David Smith, and Ashley DiRienzo from enforcing C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10:8.100.7.E.6.b and the return of the disbursed funds. ECF No. 1. He claims that the State of Colorado's termination of his trust and the Colorado statutes that allow for such termination violate the Medicaid Act as well as due process and the right to travel under the Fourteenth Amendment. He filed an amended complaint

on September 30, 2019.  ECF No 22.  Defendants filed this motion to dismiss under Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6).  ECF No. 24

## STANDARD OF REVIEW

### A.  Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) "allows a court to dismiss a complaint for lack

of subject matter jurisdiction."  *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir.

2015).  There is a presumption that a cause of action lies outside a federal court's limited

jurisdiction, "and the burden of establishing the contrary rests upon the party asserting

jurisdiction."  *Id*. (quoting *Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*, 770

F.3d 944, 947 (10th Cir. 2014)).

A motion to dismiss under Rule 12(b)(1) can either: "(1) facially attack the complaint's

allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations

contained in the complaint by presenting evidence to challenge the factual basis upon which

subject matter jurisdiction rests."  *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003).

Where, as here, there is a factual attack on the basis for jurisdiction, the Court does not presume

the truthfulness of plaintiff's allegations but has wide discretion to consider other evidence

presented.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

### B.  Fed. R. Civ. P. 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss the complaints must contain "enough facts

to state a claim to relief that is plausible on its face."  *Ridge at Red Hawk, L.L.C. v. Schneider*,

493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  A plausible claim is a claim that "allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
While the Court must accept the well-pleaded allegations of the complaint as true and construe
them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th
Cir. 2002), purely conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at
681.  However, so long as the plaintiff offers sufficient factual allegations such that the right to
relief is raised above the speculative level, he has met the threshold pleading standard.  *See, e.g.*,
*Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

## ANALYSIS

Defendants first argue that this court lacks subject matter jurisdiction over Mr. Wilson's
claims under the *Rooker-Feldman* doctrine.  ECF No. 24 at 3.  They then argue that Mr. Wilson
has failed to affirmatively demonstrate standing.  *Id.*  Finally, defendants argue that he has failed
to state any plausible claims for relief, that he has failed to meet the minimum pleading
requirements, and that defendants are entitled to qualified immunity.  *Id.*

### A. *Rooker-Feldman*

"'The *Rooker-Feldman* doctrine . . . provides that only the Supreme Court has
jurisdiction to hear appeals from final state court judgments.'"  *Mayotte v. U.S. Bank Nat'l Ass'n
for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates, Series 2006-4*, 880 F.3d
1169, 1173 (10th Cir. 2018) (quoting *Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006)).  The
doctrine precludes "cases brought by state-court losers complaining of injuries caused by state-
court judgments rendered before the district court proceedings commenced and inviting district
court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280, 284 (2005).  Accordingly, the doctrine forecloses "appellate review of [a] state

judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994). The doctrine "applies only to suits filed after state proceedings are final." *Guttman v. G.T.S. Khalsa*, 446 F.3d 1027, 1173 (10th Cir. 2006).

"The *Rooker–Feldman* doctrine 'has a narrow scope.'" *D.A. Osguthorpe Family P'ship v. ASC Utah, Inc.*, 705 F.3d 1223, 1232 (10th Cir. 2013) (quoting *Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006)). The doctrine "does not deprive a federal court of jurisdiction to hear a claim just because it could result in a judgment inconsistent with a state-court judgment." *Mayotte*, 880 F.3d at 1174. "There is no jurisdictional bar to litigating the same dispute on the same facts that led to the state judgment." *Id.* "What is prohibited under *Rooker-Feldman* is a federal action that tries to modify or set aside a state-court judgment because the state proceedings should not have led to that judgment." *Id.*

More specifically, *Rooker-Feldman* bars "those 'complaining of injuries caused by state-court judgments.'" *Id.* at 1074 (quoting *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012). "In other words, an element of the claim must be that the state court wrongfully entered its judgment." *Id.* For example, in *Campbell v. City of Spencer* a plaintiff brought a Fourth Amendment claim for the search and seizure of her horses, as well as Fifth and Eighth Amendment claims challenging the subsequent state forfeiture action. 682 F.3d at 1284–85. The Tenth Circuit found that plaintiff's Fifth and Eighth Amendment claims were "a direct attack on the state court's judgment because an element of the claim[s] is that the judgment was wrongful." *Id.* Plaintiff's Fourth Amendment claims, on the other hand, "did not attack the state-court judgment—'[s]he could raise the same claims even if there had been no state-court

proceedings,' because the complained-of actions occurred before the filing of the petition for forfeiture." *Mayotte*, 880 F.3d at 1174 (quoting *Campbell*, 682 F.3d at 1285) (internal citations omitted).

Challenges brought pursuant to the *Rooker–Feldman* doctrine are challenges to a federal district court's subject matter jurisdiction. *Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1147 (10th Cir. 2004). Because defendant's *Rooker–Feldman* argument presents a factual challenge to this court's subject matter jurisdiction, the court need not presume the truthfulness of the factual allegations in plaintiff's complaint. Rather, the court has wide discretion to allow affidavits and other documents to resolve any jurisdictional facts. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

Defendants argue that *Rooker-Feldman* bars plaintiff's claims because he seeks to set aside a final, non-appealable probate court order by alleging the order violates his federal rights. ECF No. 24 at 6. They claim that each of Mr. Wilson's claims is premised on the 2018 probate court order terminating his disability trust, and that any pleading regarding defendants' "conduct" cannot hide that Mr. Wilson's goal is to reverse the probate court order. *Id.* at 7. They claim that the alleged wrongdoing underlying Mr. Wilson's § 1983 claims are based entirely on the probate court's order and defendants' seeking and enforcing that order. *Id.*

Mr. Wilson argues that *Rooker-Feldman* cannot apply to any of his claims for two reasons: first, because the probate court is of limited jurisdiction, and second, because the probate court judgment is not yet final. ECF No. 33. I address these two preliminary arguments, and then consider whether Mr. Wilson's claims constitute a direct attack on the probate court judgment. The *Rooker-Feldman* analysis is claim specific, *see Campbell*, 682 F.3d at 1284–85,

so to the extent Mr. Wilson's claims differ in their treatment of the probate court judgment, I will consider them independently.

### 1. Limited Jurisdiction of the Probate Court

Mr. Wilson argues that because the probate court is one of limited jurisdiction, *Rooker-Feldman* does not bar consideration of claims which fall outside the probate court's purview. ECF No. 33 at 7. Defendants argue that the probate court had the authority to hear Mr. Wilson's constitutional and statutory arguments in opposition to the termination of his trust, that Mr. Wilson did not raise these arguments before that court, and that he cannot do so now. ECF No. 36 at 3.

In support of his argument Mr. Wilson points to the Colorado Constitution, describing the Denver Probate court's "original jurisdiction in all matters of probate." Colo. Const. Art. VI §9(3). He also cites C.R.S. § 13-9-103, which lists the subjects over which the probate court has original jurisdiction.

However, § 13-9-103 betrays Mr. Wilson's argument. Section 13-9-103(5) states that the probate court "has jurisdiction to determine every legal and equitable question arising out of or in connection with express trusts." On its plain language, this section grants jurisdiction to the probate court to resolve *any legal question*, including a constitutional or statutory one, arising out of an express trust brought before it, such as Mr. Wilson's. Though under § 13-9-103 the starting point in a probate case must be a probate matter, the court may resolve related constitutional or statutory arguments. Mr. Wilson does not address this section, or explain how under this section he would be unable to raise his constitutional and statutory arguments in opposition to the probate court's termination of his trust. Contrary to Mr. Wilson's assertions, he

did have a reasonable opportunity to raise his constitutional and statutory claims before the

probate court.[1]

2.  Finality of the Probate Court Judgment

Mr. Wilson claims the probate court judgment is not final because the "underlying action

relating to Wilson's trust currently is on appeal with the Colorado Court of Appeals, and thus,

the state proceedings have not ended."  ECF No. 33 at 9.  "*Rooker–Feldman* applies only to suits

filed after state proceedings are final."  *D.A. Osguthorpe Family P'ship*, 705 F.3d at 1232

(quoting *Guttman v. Khalsa*, 446 F.3d 1027, 1032 (10th Cir. 2006)).  A judgment is final "if a

'lower state court issues a judgment and the losing party allows the time for appeal to expire.'"

*Adams v. EMC Mortg. Corp.*, 549 F. App'x 718, 721 (10th Cir. 2013) (unpublished) (quoting

*Bear*, 451 F.3d at 642).

Mr. Wilson fails to acknowledge a critical issue with his argument.  There are two

separate but related probate court cases, one filed by the Department on April 9, 2018 seeking

termination of Mr. Wilson's trust (Case No. 18PR30474, the "termination case") and the other,

filed by Mr. Wilson on May 4, 2018, asking the probate court to decant his trust (Case No.

2018PR30593, the "decanting case").  ECF No. 24-1.  Mr. Wilson filed an appeal of the

decanting case, asking the court of appeals to review the probate court's decision not to decant

---

[1] I also note that the Tenth Circuit has not required that a plaintiff have had a "full and fair opportunity" to litigate her claims in the state court to apply *Rooker-Feldman*.  *See In re Smith*, 287 F. App'x 683, 685 (10th Cir. 2008) (unpublished) (quoting *Kenmen Eng'g v. City of Union*, 314 F.3d 468, 478 (10th Cir. 2002), *abrogated in part on other grounds by Exxon*, 544 U.S. 280, *and by Lance v. Dennis*, 546 U.S. 459 (2006)) ("We reaffirmed that *Rooker–Feldman* applies 'regardless of whether the state-court proceeding afforded the federal-court plaintiff a full and fair opportunity to litigate her claims' . . . .  '[C]onsideration of whether a federal-court plaintiff lacked an opportunity to previously litigate her claims in a state-court proceeding is only relevant insofar as it informs the analysis of whether the federal-court plaintiff is a 'non-party.'" (internal citations omitted)).

his trust.  ECF No. 24-7.  He did not file an appeal of the probate court's order to terminate the trust in the termination case.

Mr. Wilson's claims here do not relate to the probate court's decision in the decanting case to deny his request to decant his trust.  Rather his claims and arguments explicitly and repeatedly challenge the judgment in the termination case.  *See* ECF No. 22 at 14–15 (arguing that Colorado law conflicts with the Medicaid Act because it allows for termination before death of the trustee); *id.* at 19–21 (describing in detail defendants' attempts to terminate the trust in the termination case); *id.* at 7–8 (describing each defendants' unlawful conduct as either personally participating, overseeing, or directing that the "Department seek termination of Mr. Wilson's trust"); *id.* at 27, 30, 32, 35 (describing his first four claims as stemming from an "actual, present, and justiciable controversy between Mr. Wilson and Defendants over the termination of his Special Needs Trust"); ECF No. 33 at 10 (asserting that his injury-in-fact under the standing requirement is the State of Colorado's unlawful termination of his Special Needs Trust).

In comparison, Mr. Wilson's complaint mentions decanting only in background, summarizing the denial of his request in the decanting case.  *See* ECF No. 22 at 21.  Similarly, his brief only mentions the decanting case and his request that the probate court decant the trust in his argument that the appeal of the decanting decision bars the application of *Rooker-Feldman* in this case.  *See* ECF No. 33 at 9 n. 2.  Mr. Wilson did file a motion to consolidate the two cases, which the probate court denied.  ECF No. 36-2.

Mr. Wilson's brief provides no argument as to why the appeal of the decanting case should preclude the application of *Rooker-Feldman* to the separate, though admittedly related, judgment in the termination case.  *See* ECF No. 33 at 9.  He instead assumes that the appeal of

one precludes the application of the doctrine to the other.  I cannot agree.  Though his arguments on appeal in the state courts may address his allegations that the termination was flawed, this does not outweigh the uncontestable fact that Mr. Wilson's case before this court directly challenges the order in the termination case which he did not appeal.  I conclude that the state court judgment at issue—the termination of Mr. Wilson's trust—is final, and *Rooker-Feldman* may bar his claims.

      3.  <u>Application to Individual Claims</u>

Applying the Tenth Circuit's analysis in *Mayotte*, I consider whether the claims constitute "a direct attack on the state court's judgment because an element of the claim is that the judgment was wrongful," or if Mr. Wilson "could raise the same claims even if there had been no state-court proceedings." *Mayotte*, 880 F.3d at 1174 (quoting *Campbell*, 682 F.3d at 1285).

Unlike in *Campbell*, at first glance it appears that all of Mr. Wilson's claims directly challenge the probate court judgment as they describe the relevant conduct as the termination of his trust.  For example, Mr. Wilson's first four claims all state that "[t]here is an actual, present, and justiciable controversy between Mr. Wilson and Defendants over the termination of his Special Needs Trust and distribution of assets prior to his death."  ECF No. 22 at 27, 30, 33, 35. His first claim alleges that "the State of Colorado's conduct, through its executive agents and officials, have caused Mr. Wilson to suffer an immediate and irreparable harm to his property interests in the trust and have penalized him for exercising his constitutional right to travel." ECF No. 22 at 29.  Mr. Wilson later describes the State of Colorado's conduct as "the termination of his Special Needs Trust and reimbursement only to the State of Colorado prior to

[Mr. Wilson's] death," in an alleged violation of the Medicaid Act.  *Id.* at 27.  Mr. Wilson's

second claim alleges that defendants deprived him of a property interest without due process by

"obtaining repayment from the Denver Probate Court from Mr. Wilson's Special Needs Trust

prior to his death."  *Id.*  His third claim alleges defendants impeded his right to travel as

"freezing all assets held in his Special Needs Trust and as reimbursement of all benefits paid by

the State of Colorado."  *Id.* at 34.  The list goes on.

　　　Mr. Wilson claims that despite the language in his individual claims, he does not seek to

set aside the probate court judgment.  ECF No. 33 at 6.  Mr. Wilson argues that his claims state

"general challenges" to the Colorado Special Needs Trust statute and regulations, not attempts to

set aside the probate court judgment, and therefore they are not barred by *Rooker-Feldman*.  *See

Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1108 (10th Cir. 2000), *as amended on denial of

reh'g and reh'g en banc* (Oct. 12, 2000).  He claims he can seek a "declaration from this Court

that the Colorado regulation is unconstitutional and prospective injunctive relief," as well as

"monetary damages for alleged violations of his constitutional rights pursuant to Section 1983,"

without running afoul of *Rooker-Feldman*.  *Id.*

　　　In *Johnson v. Rodrigues (Orozco)* the Tenth Circuit considered the application of *Rooker-

Feldman* to the plaintiff's challenges to Utah adoption laws.  226 F.3d at 1107.  The Tenth

Circuit found *Rooker-Feldman* inapplicable for two reasons.  First, the plaintiff in the federal

case was not a party to the state adoption case, "a fact which makes the doctrine inapplicable."

*Id.* at 1108.  Second, the court found that the plaintiff's "discrete general challenge to the validity

of the [state statute]" distinguished that case from "one challenging the merits of a particular

state court ruling."  *Id.*  The plaintiff challenged the validity of the adoption statutes in terms of

the notice they provided him prior to the conclusion of the adoption case, alleging it fell below due process requirements. *Id.* at 1106–07.  The Tenth Circuit therefore found that plaintiff's complaint did not "attempt to appeal a particular adoption decree." *Id.* at 1109.  It concluded that "federal district courts have subject matter jurisdiction over general challenges . . . which do not require review of a final state-court judgment in a particular case" but lack jurisdiction "over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Id.*

In *Mo's Express, LLC v. Sopkin*, the Tenth Circuit clarified that general challenges may only seek prospective relief that will not serve to "undo" or "invalidate any past action" by a state court judgment.  441 F.3d 1229, 1238 (10th Cir. 2006).  Even when framed as "general constitutional challenges," requests for retrospective relief such as money damages that would "reverse or otherwise undo" the state court judgment are barred under *Rooker-Feldman*.  *Id.*

Turning to the instant case, first, Mr. Wilson was clearly a central party to the state case.  ECF No. 24-2.  The second consideration of the *Orozco* court is more complex.  Though Mr. Wilson asserts he brings only a "general challenge" to the validity of the state statute as in *Orozco*, his claims seem to mix facial challenges to the Colorado Special Needs Trust statute and regulations with specific challenges to the probate court's termination order.  For example, Mr. Wilson requests that this Court order defendants "to return to Mr. Wilson all funds belonging to him that were unlawfully seized." ECF No. 22 at 41.  Though stated in a paragraph requesting injunctive relief, this request asks this court to "undo" or reverse the state court termination order.  *Mo's Express, LLC*, 441 F.3d at 1238.

However, his request that this court declare the statute unconstitutional and enjoin defendants from enforcing it does not require this Court to find that the judgment was wrongful. In theory, Mr. Wilson could have raised these claims for relief in the absence of the probate court proceeding.  That the judgment was wrongful is not an element of proving the Colorado statute and regulations violate the Medicaid Act and Fourteenth Amendment.

Therefore, *Rooker-Feldman* requires that I dismiss for lack of subject-matter jurisdiction all elements of Mr. Wilson's complaint that seek to undo the court's termination order and remedy defendants' conduct in seeking and enforcing that order.  Specifically, I dismiss his request that the court order defendants to return all funds, ECF No. 22 at 41, and an injunction requiring a reinstatement of his trust, ECF No. 33 at 10.  Mr. Wilson's claims that challenge the lawfulness of the Colorado Special Needs Trust statute and regulation on their own state general challenges and are not barred by *Rooker-Feldman*.  What remains at this juncture are his claims for declaratory relief finding C.R.S. § 15-14-412.8 and 10 C.C.R. 2505-10: 8.100.7.E.6.b unlawful and injunctive relief enjoining defendant from future enforcement of those provisions.

**B.  <u>Standing</u>**

Defendants argue that Mr. Wilson lacks standing to seek a declaratory judgment and injunction preventing defendants from enforcing the Colorado Special Needs Trust statute and regulations.  ECF No. 24 at 9.  Standing requires three elements.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  First, the plaintiff must suffer an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).  Second, there must be a causal connection between the

injury and the conduct complained of.  *Lujan*, 504 U.S. at 560.  Finally, it must be likely, not merely speculative, that the injury will be redressed by a favorable decision.  *Id.* at 561.

First, defendants argue that Mr. Wilson cannot show standing because Mr. Wilson no longer has a disability trust subject to the statutes he challenges.  ECF No. 24 at 9.  They claim that Mr. Wilson's trust would have terminated regardless of defendants' enforcement of the statutes, because the trust contained express language requiring termination "if the trust is no longer required for Medicaid eligibility in Colorado."  *Id*.

Mr. Wilson correctly notes that the language in Mr. Wilson's trust only appears there because the trust was created under the Colorado Special Needs Trust statute and regulations.  ECF No. 33 at 11.  Absent the provision in 10 C.C.R. 2505-10:8.100.7.E.6.b requiring the trust to terminate upon the beneficiary becoming ineligible for Colorado Medicaid, Mr. Wilson's trust need not have terminated upon his departure from the state.  Defendants cannot credibly argue that irrespective of the statute, Mr. Wilson would have suffered the same injury.

Moving to defendants' second argument, defendants appear to challenge both whether Mr. Wilson has suffered an injury in fact and the redressability of his injury.  Defendants claim that there is no injury in fact because Mr. Wilson no longer has a trust.  Mr. Wilson correctly points out this is essentially a mootness argument.  "[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.'"  *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).  "[T]he question of mootness is a federal one which a federal court must resolve before it assumes jurisdiction."  *Id.* (quoting *Rice*, 404 U.S. at 246) (internal quotations omitted).

Deciding the questions raised in Mr. Wilson's complaint would not affect his rights at this point in time. As defendants point out, Mr. Wilson no longer has a trust, and he cannot seek a remedy for that problem in this court. The relief he can seek, declaration that the Colorado Special Needs Trust statute and regulations are unlawful, and an injunction barring their enforcement, will not affect his rights because he is no longer a trust beneficiary subject to the statute and regulations. As such, I find that this case is moot.

Although this mootness finding is sufficient to dismiss Mr. Wilson's remaining claims, for the sake of finality I also address the redressability issue. I find Mr. Wilson's injury is no longer redressable by the relief available to him. "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998). In *Steel Co. v. Citizens for a Better Env't* the Supreme Court found that because statutory civil penalties for a violation of the Emergency Planning and Community Right–To–Know Act ("EPCRA") were paid to the government and not to plaintiff, the requested relief did not redress plaintiff's injury. *Id.* "Respondent seeks not remediation of its own injury . . . but vindication of the rule of law—the 'undifferentiated public interest' in faithful execution of EPCRA." *Steel Co.*, 523 U.S. at 106 (quoting *Lujan*, 504 U.S. at 577).

Mr. Wilson argues he has shown redressability because, "[s]hould this Court rule in favor of Wilson, the Statute and Regulation will be declared unconstitutional and his injury will be redressed through an award of monetary damages under § 1983 and a mandatory injunction requiring a reinstatement of his Special Needs Trust." ECF No. 33 at 10. However, above I dismissed Mr. Wilson's requested retrospective relief as barred by *Rooker-Feldman*. Mr. Wilson's remaining requested relief—declaratory judgment and an injunction enjoining

defendants from enforcing the statute moving forward—will not redress Mr. Wilson's injury, as he no longer possesses a trust that could be subject to future enforcement. With the relief available to him Mr. Wilson may only seek vindication of the rule of law, which is insufficient to meet the constitutional standing requirement. *See Steel Co.*, 523 U.S. at 106. Because Mr. Wilson no longer has standing to bring a claim for declaratory or injunctive relief, the remainder of his claims are dismissed.

This result may seem unjust to Mr. Wilson, who is understandably disturbed by the termination of his trust. I do note that this result comports with the overall premise of the *Rooker-Feldman* doctrine that lower federal courts cannot serve as appellate forums for state court decisions. Mr. Wilson had a state appellate court to which he could have appealed the probate decision, an option he exercised in the decanting case. Though federal courts are sometimes the appropriate forum for "general challenges" to state statutes such as those Mr. Wilson alleged in part here, such general challenges must meet the constitutional minimum standing requirements, which he has not done.

## ORDER

Defendant's Motion to Dismiss, ECF No. 24, is GRANTED.

DATED this 22nd day of May, 2020.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge

17